MARTIN A. DAVEY v. COUNTY OF GALVESTON

1. Blessing *v.* City of Galveston, 42 Tex., 641, reaffirmed.
2. Cain *v.* The State, 20 Tex., 356, reaffirmed.
3. CONSTITUTIONAL LAW.—The act of February 2, 1856, (Paschal's Dig., 2061–2071,) entitled "An act to authorize the County Courts of the State to grant a license for the retail of spirituous, vinous, and intoxicating liquors, in quantities less than a quart, and imposing a

license tax for such privilege:" *Held*, To embrace but one leading object; its subsidiary provisions are legitimately connected with, and tend to enforce such main object so expressed in its title.

4. CONSTRUCTION OF STATUTES.—The said act and the amendment to it (October 27, 1866, Paschal's Dig., 2075–2082) was not repealed by the act of November 6, 1866, "An act to levy taxes;" the provisions in said acts not conflicting. The amount of the tax, the manner of collecting it, and the purpose to which it should be applied are matters of legislative discretion.

5. COURT-HOUSE AND JAIL TAX.—The act "authorizing the Police Courts of the several counties of the State to issue and sell bonds for the purpose of erecting court-houses and jails, and to levy a special tax to meet the same," approved October 27, 1866, (Gen. Laws, 11th Leg.,) was intended to enable the different counties to provide the means to erect suitable buildings for the proper administration of justice and enforcement of the law; and such act was sufficient authority to levy a tax to pay interest on bonds for the erection of a "jail and work-house."

6. SAME.—That such bonds have not been issued, is not a sufficient ground to maintain an action to recover taxes so levied, in the absence of allegations that the county had abandoned the purpose of erecting such buildings, or that the tax collected had been diverted to other purposes.

APPEAL from Galveston. Tried below before the Hon. A. P. McCormick.

Under the act entitled "An act to authorize the Police Courts of the several counties of the State to issue and sell county bonds for the purpose of erecting court-houses and jails, and to levy a special tax to meet the same," approved October 27, 1866, (Gen. Laws, 11th Leg., p. 66,) the Police Court of Galveston county, at its January Term, 1867, made an order levying a special tax of one half of the amount levied by the State on all subjects of taxation for the purpose of paying interest and principal on county bonds to be issued and negotiated for the purpose of erecting a jail and work-house for said county. The court, at the same term, provided for the issuance, &c., of such bonds.

Under this tax, seventy-five dollars was collected of Davey, as a special tax on his occupation of selling liquors in quantities less than one quart.

The bonds contemplated in the order above were never issued.

Under the act entitled "An act to authorize the County Courts of this State to grant a license for the retail of spirituous, vinous, and other intoxicating liquors in quantities less than a quart, and imposing a license tax for such privileges," approved February 2, 1856, (Paschal's Dig., arts. 2061, 2071,) and an act to amend the 3d, 4th, 5th, and 9th sections of the above-entitled act, approved October 27, 1866, (Paschal's Dig., art. 2072, &c.,) the sum of three hundred dollars per year, for each of the years 1867, 1868, and 1869, and for the year 1870, ending in August, was collected by the treasurer of Galveston county from Davey, as a jury fund or license tax on his occupation above stated; which sum was appropriated and paid out for jury service.

Under a levy of taxes made by the County Court for general county purposes for the years 1867, 1868, 1869, and for 1870, ending in August, the further sum of one hundred and fifty dollars for each year was collected by Galveston county, of Davey, as county tax on his occupation for those years; which sums were paid into the county treasury and appropriated for general county purposes.

Davey presented his claim for said taxes, as illegally collected of him, to the County Court for allowance and payment.

The County Court refused to audit or pay his claims, and he brought suit in the District Court, and judgment was rendered against him, from which he appealed.

*Ben. C. Franklin* and *L. E. Trezevant*, for appellants, insisted—

I. The special tax levied for jail and work-house was illegal. (Paschal's Dig., art. 1044; Cooley's Const. Lim., 194, 488, 490, 494, 518, 520; Dillon on Mun. Cor., §§ 12, 55, 610, and note, 731, 732; Black. on Tax Titles, 106, 162, 164, 447, 448; McSpedon *v.* Mayor of New York, 20 How. Pr.

Rep., 395; Sharp *v.* Speir, 4 Hill, 76; City of Leavenworth, *v.* Norton, 1 Kan., 432; Judge of Campbell County *v.* Taylor, 8 Bush., 206; Sedg. on Stat. and Const. Law, 466; Supervisors of Cumberland County *v.* Webster, 53 Ill., 141; Mack *v.* Jones, 1 Foster, (N. H.,) 395; Dillingham *v.* Snow, 5 Mass., 547; Weeks *v.* City of Milwaukie, 10 Wis., 242; Ashville *v.* Means, 7 Ired., (Law,) 406; Truett *v.* Justices, 20 Ga., 102; Stetson *v.* Kempton, 13 Mass., 272; Lisbon *v.* Bath, 1 Foster, 319; Bussey *v.* Gilmore, 3 Greenl. Rep., 191; Philbrook *v.* County of Kennebec, 17 Maine, 196; Bradford *v.* Chicago, 25 Ill., 412; Wapello County Case, 13 Iowa, 388.)

II. The act under which the $300 license tax for jury fund was collected was unconstitutional. The act of February 2, 1856, and the amendatory act of October 27, 1866, are in violation of the constitutional provision: "Every law enacted by the Legislature shall embrace but one object, and that shall be expressed in its title.". It contains as one object, police regulation; and another, taxation. (Cannon *v.* Hemphill, 7 Tex., 208; City of San Antonio *v.* Gould, 34 Tex., 49; Cooley, 479, 496, 572, 586; Blackwell, 1; Bouvier's Dic., title Police; Napier *v.* Hodges, 31 Tex., 287; Baker *v.* Panola County, 30 Tex., 91; Commonwealth *v.* Holbrook, 10 Allen, 200; Ward *v.* Maryland, 12 Wall., 418; Brown *v.* Maryland, 12 Wheat., 419; State *v.* City of Hoboken, 33 N. J. Law Rep., 280; The Mayor *v.* Second Avenue R. R. Co., 32 N. Y., 261; The Mayor *v.* Third Avenue R. R. Co., 33 N. Y., 42; Freeholders of Essex *v.* Barber, 2 Hals., 64; Mayor of Columbia *v.* Beasly, 1 Humph., 240; City of Burlington *v.* The Putnam Ins. Co., 31 Iowa, 102; Leonard *v.* City of Canton, 35 Miss., 189; Commonwealth *v.* Stodder, 2 Cush., 562; Dunham *v.* Trustees of Rochester, 5 Cow., 462; Attorney General *v.* Win. Lake & Fox River Plankroad Co., 11 Wis., 44; Robinson *v.* Mayor of Franklin, 1 Humph., 156; Waters *v.* Leech, 3 Ark., 110; *Ex parte* Burnett, 30 Ala., 461; Erie R. R. Co. *v.* The State, 31 N. J. Law, 531; Paschal's Dig., art. 1187; Lauer *v.* The State, 22 Ind., 461; The State *v.* St

Louis Cathedral, 23 La. Ann., 720; The People v. Dehany, 20 Mich., 349.)

III. The special tax of $300 as jury fund was not collectable by law, because the act of 2d February, 1856, and the amendatory act of October 27, 1866, under which the tax was collected, were repealed by "an act to levy taxes," approved November 6, 1866. (Gen. Laws 11th Leg., 91.) (Counsel discussed Napier v. Hodges, 31 Tex., 287.)

IV. The tax of $150, levied by the county as occupation tax, is in violation of the following clause in the Constitution: "Taxation shall be equal and uniform throughout the State." On this point, in addition to their brief in Blessing v. City of Galveston, 42 Tex., 641, counsel cited Crow v. State, 14 Mo., 237; Ryerson v. Utley, 16 Mich., 269; Cooley, 495, and note 1; 12 Allen, 504, 15 B. Monr.; Parish of Orleans v. Cochran, 20 La. Ann., 373; State v. Merchants' Ins. Co., 12 La. Ann., 802; Police Jury v. Nouges, 11 La. Ann., 739; People v. McCreary, 34 Cal., 455, (overruling People v. Coleman, 4 Cal., 46; People v. Naglee, 1 Cal., 252;) Knowlton v. Supervisors of Rock County, 9 Wis., 410; Gilman v. Sheboygan, 2 Black, 510; Attorney General v. Win. Lake & Fox River Plankroad Co., 11 Wis., 35; Marr v. Enloe, 1 Yerg., 452; Mayor of Nashville v. Althorp, 5 Cald., 554; Oliver v. Washington Mills, 11 Allen, 268; Mayor of Columbia v. Beasley, 1 Humph., 232; State v. Eastabrook, 3 Nevada, 173; City of Lexington v. McQuillan's Heirs, 9 Dana, 512; Sutton's Heirs v. Louisville, 5 Dana, 28.

V. The county can properly be sued for illegal taxes they have levied and received. (Paschal's Dig., arts. 1044, 1045; Baker v. Panola County, 30 Tex., 86; Watkins v. Walker County, 18 Tex., 585; County v. Barker, 7 Minn., 267; First National Bank of Sturgis v. Watkins, 21 Mich., 483; Paine v. Commissioners, &c., Wright, (Ohio,) 417; Estep v. Keokuk County, 18 Iowa, 199; Jay v. County of Oxford, 3 Greenl., 122; Joyner v. Egremont, 3 Cush., 567; Swift v Inhab-

itants of Danville, 51 Maine, 359; Small *v.* City of Pough-
keepsie, 37 N. Y., 511.)

*Wheeler & Rhodes* and *C. B. Sabine,* for appellee, both filed
briefs.

*L. E. Trezevant,* in supplemental brief for appellant.—The
rule that if a person pay money voluntarily he cannot recover
it back does not apply where the parties· are not on equal
terms in the transaction. (City of Marshall *v.* Snediker, 25
Tex., 460; Baker *v.* Panola Co., 30 Tex., 86; City of Gal-
veston *v.* Sydnor, 39 Tex., 236; Lafou *v.* Dufrocq,·9 La. An.,
350. Where the money is taken illegally and under color of
public office, an action lies for its recovery. First National
Bank *v.* Watkins, 21 Mich., 483, where all the cases are
collected; Steele *v.* Williams, 20 Eng. L. and Eq., 319, in
which Martin, B., says, " the case of Morgan *v.* Palmer, 2 B.
& C., 729, shows that if a person illegally claims a fee *colore
officii,* the payment is not voluntary so as to preclude the
party from recovering it back." (2 Greenl., sec. 121 and
notes; Barnes *v.* Foley, 5 Burr, 2711; Story on Agency, sec.
307; Frye *v.* Lockwood, 4 Cowen, 454; Bend *v.* Hoyt, 13
Peters, 263; 20 Ind., 301; Amesbury Wool and Cotton
Manufactory *v.* Inhabitants, 17 Mass., 461; Bradford *v.* City
of Chicago, 25 Ind., 411; County *v.* Parker, 7 Minn., 267;
Joyner *v.* Egremont, 3 Cush., 567; Leonard *v.* City of Can-
ton, 35 Miss., 189; 12 Pick., 7; 40 Ind., 340; 42 Ill., 336;
4 A. & E., 858; 10 Howard, 242; 49 Eng. C. L., 253, 292;
S. C., 7 Man. & G., 253, 292; 49 Eng. C. L., 586; S. C., 7
Man. & G., 586; 10 Eng. C. L., 310; S. C., 4 B. & C., 200;
50 Eng. C. L., 394; 10 Gilman, 513; 39 New Hamp., 143,
145, 146, 148, 149; 20 Mich., 118; 4 Met., 181; 7 Greenleaf,
134; 9 Howard, 619; 3 Johnson's Cases, 238.)

Moore, Associate Justice.—This is a suit by appellant to
recover back money which, it is alleged, had been wrong-

fully and illegally collected from him as taxes by the county of Galveston. The taxes, which are charged to have been thus illegally exacted and collected, are—

1st. Special tax levied for the year 1867, to pay principal and interest on bonds to be issued for the erection of a jail and workhouse. 2d. License tax paid to the county treasurer for the benefit of the jury fund in the years 1867, 1868, 1869, and 1870. 3d. Tax for general county purpose of one half the occupation tax levied on appellant by the State for the same years.

On the trial, the court instructed the jury in effect that appellant was liable for the amount which he alleges he had paid as license and county occupation tax; and if no greater amount had been collected they should find for the defendant, but if any greater amount had been collected and appropriated by the defendant, the plaintiff was entitled to a recovery for such excess. No reference is made in the charge to the special tax for the erection of a jail and workhouse, and no instructions whatever were requested by either party. The jury returned a general verdict in favor of the defendant, and the court gave a corresponding judgment, from which the plaintiff appeals and assigns for error—

"I. The court erred in each and every part of the charge given to the jury.

"II. The court erred in overruling plaintiff's motion for a new trial.

"III. The verdict of the jury is contrary to law, the evidence, and the charge of the court, and the judgment is for the defendant, when it should have been for the plaintiff."

As the first and third assignments are the precise grounds presented by the motion for a new trial, the second assignment, that the court erred in overruling this motion, is no more than a reiteration of them.

We are called upon by the first assignment to decide whether the county of Galveston was authorized to collect from appellant, for general revenue, during the years mentioned in

the petition, one half the amount of occupation tax levied upon him by the State; and whether during the same time he was required to pay to the county treasurer a license tax, for the benefit of the jury fund, as a retailer of spirituous wines and other intoxicating liquors.

In regard to the first of these taxes it will suffice to say that the objections which are made to it were fully considered and decided in the case of Blessing v. The City of Galveston, 42 Tex., 641, in which the same argument and authorities were urged that are now relied upon for the reversal of the judgment in this case. A reconsideration of them has not shaken our confidence in the correctness of the conclusions to which we then came, and we deem it therefore unnecessary to reopen their discussion.

In regard to the second of these taxes it is urged that the act of February 2, 1856, by which it is imposed, was repealed by the act to adopt and establish a penal code, approved August 28, 1856. This precise question was fully considered, and after a most thorough and exhausting discussion was decided in the negative by this court in the case of Cain v. The State, 20 Tex., 356. Although the present chief justice dissented from the conclusion of the majority of the court, the judgment has ever since been regarded by the court and bar as settled law, and it is now much too late to reopen it.

It is also insisted that the act is unconstitutional because it embraces two objects, both of which are expressed in its title. The number of cases in which the court has been called upon to consider similar objections to other laws, renders it unnecessary to say little more than that this objection cannot be maintained. The act embraces, as we think, but one leading object. All its provisions are subsidiary to, and legitimately connected with, and tend to effect and enforce, this main object, which is sufficiently, clearly, and definitely expressed in the title. The constitutionality of the act, as we have just said, was directly before the court

shortly after its enactment; and the fact that no objection of this kind was then made to it by counsel or the court, and that it has been ever since recognized as a valid and constitutional enactment, is strongly persuasive that the objection is without force. Legislation of a similar character, both in respect to the title and the subject-matter of the act, has, it is believed, been of frequent occurrence; and it has been too long recognized and enforced to be lightly set aside or annulled by the courts.

Nor do we think we are justified in saying that this act of February 2, 1856, and the amendment thereto of October 27, 1866, were repealed by the act entitled "An act to levy taxes," approved November 6, 1866. It cannot be denied that appellant was engaged in an occupation for the pursuing of which he might be required by law to procure a license, and upon which an occupation tax could be imposed by the Legislature. The amount of such tax, the manner of collecting it, and the purposes to which it should be applied when collected, are matters of legislative discretion. We cannot say that laws enacted by the Legislature to effect these purposes are unconstitutional, unless they are clearly shown to be in conflict with some provision of that instrument; nor can the court say that the Legislature may not assess the amount of tax it intends levying, by different acts, in which the amount collected under one act may be appropriated differently from that imposed by the other. Nor do we think that we would be warranted in holding that the former of such acts was repealed by the latter, by implication, unless they were clearly and manifestly in conflict with each other.

The jury were instructed, if a greater amount had been collected from appellant than he was liable for as occupation and license tax, they should find in his favor for such amount; and as it appears that he had paid in 1867 seventy-five dollars as jail and workhouse tax, it is insisted that the verdict is against the evidence, and the judgment should be

reversed. It would suffice to say, in answer to the objection to the judgment, that the third assignment of error is too general and indefinite to require us to consider a special objection to a verdict of this character. But, aside from this, the objection presents no valid ground for a reversal of the judgment. It is insisted that the law only authorizes the levy of taxes by the several counties of the State for the construction of "court-houses and jails," while this tax was assessed to pay the principal and interest of bonds to be issued to erect a "jail and workhouse." And hence the tax, in so far as it was intended to provide means for erecting a workhouse, was unauthorized and void. This, in our opinion, is a much too technical construction of the law, as well as of the action of the County Court under it. The intent and purpose of the statute is to enable the different counties to provide means to erect suitable buildings for the proper administration of justice and enforcement of the law, with which the object to which the tax levied by Galveston county was to be applied, was entirely consistent and appropriate.

It is also urged, as we think, with more reason, that no such bonds as those referred to in the levy of the tax have been issued by the county, and therefore appellant is entitled to recover back the tax collected from him to pay them. But it is not alleged that the county has abandoned all intention of issuing the bonds in future, or that the tax has not been applied to the construction of a jail or prison for the use of the county, or that the money so collected has been improperly diverted from the purpose for which the tax was levied. Unless something of this kind was clearly shown, appellant unquestionably cannot recover it back from the county.

There is no error in the judgment, and it is affirmed.

AFFIRMED.