GRAY v. S. T. WOODRING LUMBER CO. et al. (No. 8758.)

(Court of Civil Appeals of Texas. Ft. Worth. May 19, 1917. Rehearing Denied June 23, 1917.)

1. INJUNCTION ⚫➞122—PLEADING—VERIFICATION—SUFFICIENCY.

In suit for injunction against city officers to restrain their action, a petition verified only on information and belief is insufficient, under Vernon's Sayles' Ann. Civ. St. 1914, art. 4649, stating the requisites of a petition for an injunction.

2. INJUNCTION ⚫➞12 — RIGHT — EXTENT OF RELIEF.

In suit to restrain erection of alleged fire hazard buildings in close proximity to plaintiff's buildings, where plaintiff admitted that, if constructed at a given distance, his hazard would not be increased, he was in no position to complain of denial of the injunction, which sought a still greater removal of the buildings.

3. CONSTITUTIONAL LAW ⚫➞70(3)—STATUTES —ORDINANCES — MOTIVES OF LEGISLATIVE BODY.

In passing upon the question of the reasonableness of an act of the Legislature, or an ordinance of a municipal corporation, the good faith or motives of the legislative body cannot be questioned by the court called upon to construe the statute, such not being a matter of judicial inquiry, and this rule applies to legislative acts of municipal corporations, and not to ministerial acts.

4. MUNICIPAL CORPORATIONS ⚫➞122(2)—ORDINANCES—ENJOINING ENFORCEMENT—BURDEN OF PROOF.

The burden of establishing the unreasonableness or discriminatory character of an ordinance is upon the party seeking to enjoin its enforcement.

5. INJUNCTION ⚫➞34—FIRE HAZARDS—STORING SHINGLES—RIGHTS OF OWNER.

The mere fact that storing shingles near building of another owner would tend to increase his fire hazard does not warrant enjoining such use of his premises, since such hazard is largely an incident to the ownership of urban property.

Buck, J., dissenting in part.

Appeal from District Court, Johnson County; O. L. Lockett, Judge.

Suit by W. J. Gray against the S. T. Woodring Lumber Company and others. From the decree rendered, complainant appeals. Affirmed in part, and in part reversed and remanded.

H. P. Brown, Warren & Russell, and S. C. Padelford, all of Cleburne, for appellant. Walker & Baker and W. E. Myers, all of Cleburne, for appellees.

BUCK, J. W. J. Gray filed suit in the district court of Johnson county against the S. T. Woodring Lumber Company, a corporation, and the city of Cleburne, represented by · its council, alleging that he was the owner of certain lots in the city of Cleburne; that said lots were located near the public square, and had on them a two-story building used as a hotel, and other improvements; that prior to February 17, 1917, there existed and was in force an ordinance including the entire block in which plaintiff's lots were located within the fire limits, and prohibiting all owners of lots within said block from erecting any buildings except such as were constructed of brick, concrete, or stone, or a combination thereof, or from moving thereon buildings not so constructed; that on said last-named date the defendant lumber company purchased the south one-half of said

block, and entered into possession thereof with the purpose of operating thereon a lumber yard; that just prior to said purchase, the said lumber company—

"by and through certain evilly disposed persons, and for the private and individual use and benefit of the defendant, the said S. T. Woodring Lumber Company, applied to the other defendants, sitting as the common council of the city of Cleburne, for the purpose of changing the said ordinance fixing the fire limits of said city of Cleburne, so that the private property of the said defendant S. T. Woodring Lumber Company would be exempted from said fire limits and obligations placed upon those within said fire limits, and would be placed without said fire limits, and that the said defendant the city of Cleburne, by and through its common council, as alleged above, for the purpose of accommodating the said defendant S. T. Woodring Lumber Company * * * repealed that portion of the ordinance of the city of Cleburne fixing the fire limits as alleged above and excluded the south portion of said block No. 10 from within said limits."

It was further alleged that the passing of said amended ordinance was effected for no public purpose, but for the purpose of injuring plaintiff, and of enabling the lumber company to erect other wooden buildings, nearer and closer to the buildings of the plaintiff, thereby rendering plaintiff's buildings more liable to fire hazard. It was alleged that the ordinance as passed was discriminatory, and a writ of injunction was sought to restrain the enforcement of said ordinance by the city of Cleburne and the erection of wooden buildings on the south half of said block by the lumber company.

After general demurrer and special exceptions, the defendants, the lumber company and the city of Cleburne, answered in separate pleadings, denying that any improper motives had actuated the council of the city of Cleburne in passing the ordinance and denying that the lumber company had conspired with the members of said council to secure the passage of said ordinance, and denying that the enforcement of the ordinance would increase the fire hazard of the plaintiff, or subject his property to an increased rate of insurance. It was further pleaded that the city of Cleburne was specially authorized by the statutes of this state to locate and establish the fire limits of the city of Cleburne and to modify or alter the same at its discretion, and that the charter of the city of Cleburne specially conferred similar powers upon the council, and that the discretion of the council in so establishing, modifying, or altering the fire limits was not subject to the control of the courts, or to an investigation or attack on the ground that the ordinance might be discriminatory or unreasonable.

The lumber company specially denied that it had commenced, or was about to commence, the erection of wooden sheds or structures, or contemplated the erection of such structures on its lot further north than the original sheds thereon, but that, on the contrary, the sheds it was then erecting were further south than the original sheds, and more than 30 feet from the north line of its property. It further alleged that it was placing a roadway or driveway on the north line of its lot along the south line of plaintiff's lot, and that the same would be kept free from buildings or other structures, and would in no wise interfere with the plaintiff's property, depreciate its value, or increase the fire hazard or insurance rate, etc. It further alleged that the hotel building owned by the plaintiff was situated on the north end of his lot, and more than 30 feet from his south line, and that other improvements on his property consisted of worn-out and dilapidated sheds, horse stalls, barns, etc., all composed of wood, and very unsightly, and that the same constituted a constant and definite fire menace to the whole neighborhood. It further alleged that the defendant lumber company was proposing to conduct a large retail lumber business on its lot, and that the same would draw trade to that block and the surrounding blocks and prove very beneficial to persons engaged in business in that neighborhood. Attached to its sworn answer were affidavits from R. E. Pitts and C. H. Warren, both engaged in the fire insurance business in Cleburne, stating that the fire hazard of plaintiff's property would not be increased or the insurance rates raised by the erection of the new sheds on defendant lumber company's property.

Defendant city of Cleburne answered, adopting, in part, the answer of the lumber company, and further averring the ordinance in question had been duly and legally passed by the city council of said city, and that in its passage said council had exercised the broadest discretion, looking alone to the public good and welfare of the inhabitants of said city; that said ordinance was duly and legally adopted in the mode and manner provided by law and under the authority given said city in article 15 of its charter.

Plaintiff by supplemental petition demurred generally and specially to defendant lumber company's answer, and in a general way denied the allegations contained in said answer, and specially alleged that, though defendant had removed its sheds further south from plaintiff's property, it was using said property for storing highly combustible matter and material, consisting of shingles, etc., and that the storing of such combustible material near to plaintiff's property would increase its fire hazard. He further admitted that the wooden sheds, horse stalls, etc., on the south end of his lot were somewhat dilapidated, but stated that he had been desirous of improving the same, and had applied to the mayor of the city of Cleburne for the privilege to improve the same with material other than brick or such as would be fireproof, and had been denied such privilege.

Perhaps sufficient pleadings have been noted to meet the requirements of the dis-

cussion hereinafter to follow, though the pleadings, especially of the plaintiff, were rather voluminous.

The cause was heard by the court in chambers, being apparently submitted on the pleadings and accompanying affidavits alone, and the court granted an injunction, restraining the lumber company "from permanently storing or keeping any lumber, shingles, or inflammable material of any character in the rear of the plaintiff's lots within 25 feet of his south line." In all other respects the injunction sought was denied. Both plaintiff and the defendant lumber company excepted and gave notice of appeal and filed their appeal bonds, which were duly approved, but the plaintiff, having applied for transcript, is treated in the record as the appellant, and will be so styled and regarded here.

The south boundary line of the fire district as designated by the amended ordinance cuts off some 4 feet of plaintiff's claimed property, though the pleadings of the lumber company alleged the ownership of said south 4 feet to be in said company, and that plaintiff was holding the strip adversely to defendant in an effort to procure title to same by limitation. The north line of defendant lumber company's half block coincides in the main with the south boundary of the fire district, the principal portion of the said half block extending 4 feet beyond and north of plaintiff's alleged south line. This is mentioned for the reason that some importance seems to be attached by appellant to the fact that the south line of the fire district divides his lots, leaving all but 4x105 feet (the lots each being 52½ feet wide) within the fire limits.

[1, 2] Both parties complaining of the judgment, we will first consider appellant's contentions. Appellant's original petition is verified only upon information and belief. This form of verification has been held many times insufficient in this character of proceeding. Abilene Independent T. & T. Co. v. S. W. T. & T. Co., 185 S. W. 356, 359; Lane v. Jones, 167 S. W. 177, 179; Clarey v. Hurst, 136 S. W. 840, 843; article 4649, Vernon's Sayles' Texas Civil Statutes. Hence plaintiff's original petition, not being properly verified, was insufficient to justify any injunctive relief thereon. If the supplemental petition, which was properly verified, be looked to for such authority, and if there be supplied from the original petition the essential allegations as to parties, etc., which the supplemental petition omits, yet, inasmuch as the latter petition admits that the defendant lumber company has erected its sheds 30 feet from plaintiff's south line, and admits that plaintiff agreed with the lumber company, if the latter would donate 10 feet, that the plaintiff would donate 10 feet, the 20 feet to be used as a public alley, and that by said plan and arrangement plaintiff's insurance rates would not be increased or the fire hazard to his property enhanced, we are unable to see that plaintiff is in position to com-

plain of the denial of the broader relief sought. It is true he alleged that the defendant lumber company had stored, and was threatening to store, shingles and other combustible material within the space, which, he says, if left open would protect his property from increased fire hazard, yet, as the judgment granted him a fuller relief than he claimed was sufficient to protect his property, any equitable rights shown have been guarded by the judgment. Hence we have concluded that at least so much of the judgment as denied plaintiff further relief must be sustained. Further, by article 965, Vernon's Sayles' Texas Civil Statutes, it is provided:

"The city council, for the purpose of guarding against the calamities of fire, may prohibit the erection, building, placing, moving, or repairing of wooden buildings within such limits within said city as they may designate and prescribe," etc.

Article 15, § 116, of the special charter granted the city of Cleburne confers upon that municipal corporation the power to create and establish fire limits, and also to modify, alter, or change the same. While there is ample authority for the contention that where the Legislature has granted special authority to pass ordinances of a specified purpose and defined character, if the power thus delegated does not conflict with the Constitution, the validity of an ordinance passed thereunder cannot be impeached because it would have been regarded as unreasonable if it had been passed under the incidental powers of the corporation (2 McQuillin on Mun. Corp. § 725; Chimene v. Baker, 32 Tex. Civ. App. 520, 75 S. W. 330, citing Dillon on Mun. Corp. § 328), yet it appears from an examination of Texas authorities that our courts have not uniformly observed this distinction, though in many instances they have recognized it. See H. & T. C. Ry. Co. v. Dallas, 98 Tex. 396, 84 S. W. 648, 70 L. R. A. 850.

[3] But it is undoubtedly true that in passing upon the question of the reasonableness of an act of the Legislature, or an ordinance, of a municipal corporation, the good faith or motives of the legislative body cannot be questioned by the courts called upon to construe the statute, such not being a matter of judicial inquiry. McQuillin on Mun. Corp. vol. 2, p. 1527, § 703 et seq. This rule applies to legislative acts of municipal corporations and not to ministerial acts. Id. § 704.

[4] But if the act on its face is unreasonable or discriminatory, or it is shown to be so by the circumstances attending its attempted enforcement, it may be so declared by the courts and held void. But the burden of establishing the unreasonableness or discriminatory character of an ordinance is upon the party seeking to enjoin its enforcement. Milliken v. Weatherford, 54 Tex. 388, 38 Am. Rep. 629; Mills v. Railway Co., 94 Tex. 242, 59 S. W. 874, 55 L. R. A. 497. The last-cited case restates the proposition that if the ordinance be expressly authorized by the Leg-

islature and be a regulation which the Legislature itself has the power to adopt and enforce, the courts cannot inquire into its reasonableness. It seems we are justified in holding, further, that the judgment against plaintiff below ·must be sustained upon the ground that the Legislature has conferred upon the city of Cleburne, both by statute and by special charter, the power to pass an ordinance determining and fixing the fire limits, and that no judicial inquiry as to the reasonableness of such exercise of power is permissible. Raffetto v. Mott, 60 N. J. Law, 413, 38 Atl. 857; Railway ·Co. v. City of Dallas, 98 Tex. 396, 84 S. W. 648, 70 L. R. A. 850. Moreover, in our judgment, the pleadings of appellant, as controverted by the pleadings of defendant and affidavits, do not sustain his· claim of discrimination, and the judgment should be upheld on the theory that defendants have sworn away any grounds for equitable relief shown by appellant. So upon all of these grounds we hold the judgment, so far as complained of by appellant, must be sustained.

[5] Appellee complains of the injunction restraining it from storing shingles and other combustible material within 25 feet of. appellant's south line. The majority are of the opinion that this contention should be sustained, and the portion of the order and judgment adjudging plaintiff such relief should be reversed, in order that that issue alone may be determined upon a hearing on the merits ;, that since the trial court did not find, nor was it justified in finding, that the ordinance in question was unreasonable, appellee should not be deprived of such use of its property as is not prohibited by law. The majority are of the opinion that it is not shown that the storing of shingles and other lumber on the north 25 feet of appellee's lot is an unreasonable exercise of the right of domain of the owner of said lot, and that, even though it should be conceded that thereby appellant's property will be subjected to a greater fire hazard, such consequences are only the natural result flowing from the ownership of property in a city or town, where improvements on and uses of land must necessarily affect, in a measure, those owning or occupying adjoining premises. The general rule is that the owner of land has the right to make any reasonable use of it he sees fit, and if injury result to an adjoining landowner, it is damnum absque injuria. I. C. J. p. 1202. This text uses the following language:

"The test as to whether the particular use of the premises is a reasonable one is whether or not it is such a use as, under the circumstances, an ordinary man would make of his premises, taking into consideration the importance of the use to the owner, as well as the extent of damage to be inflicted upon his neighbor, and if he uses ordinary care therein to prevent unnecessary injury to adjoining landowners, the fact that the use is one which will inevitably produce injury to such adjoining owners does not necessarily make it negligence."

The case of G., C. & S. F. Ry. Co. v. Oakes, 94 Tex. 155, 58 S. W. 999, 52 L. R. A. 293, 86 Am. St. Rep. 835, which involved the planting of Bermuda grass on the railway company's right of way and the consequent spreading thereon onto appellee's land, lays down the rule in the following language quoting from the syllabus:

"In determining what is the proper use of land by its owner, with reference to adjacent lands, the importance of the use to the owner, as well as the damage to be inflicted upon his neighbors, must be taken into consideration, and the rights of the parties are to be adjusted in a practical way, the question being whether the proposed use is a reasonable one, under all the circumstances."

Applying the rule as above stated to the instant case, it should be noted that in appellee's answer to appellant's supplemental petition, it is said:

"That it is not true that the defendant threatens to keep any combustible material near the south line of the plaintiff's property, as alleged in the sixth paragraph of the supplemental petition, or that the use this defendant is making of its property, or any contemplated use, would result in raising the insurance rates on plaintiff's property, or upon any structures which might be erected thereon. That the building material and other property located on the north side of its property will be removed as soon as the sheds are completed," etc.

In the opinion of the writer the trial court was authorized to find, as he evidently did, that the "shingles and other combustible material" placed within 25 feet of plaintiff's south line would endanger his property. While defendant denied its intention to leave such material there permanently, yet plaintiff had so alleged, and the injunction merely restrained the defendant from doing that which it disclaimed any intention of continuing to do. The fact that appellee is complaining of this restriction in the use of its property supports the evident conclusion of the trial court that it did so intend. Therefore the writer is of the opinion that the judgment should, in all things, be affirmed. But in line with the views of the majority, the judgment, in so far as it denies to plaintiff the injunction restraining the defendant lumber company from erecting on its land other than fire proof buildings, and denying injunctive relief against the city of Cleburne, is affirmed, and the injunction granted, restraining appellee lumber company from storing shingles or other combustible material within 25 feet of appellant's south line, is reversed, for the purpose of having that issue tried on its merits by the trial court.

Affirmed in part; reversed and remanded in part.

BUCK, J., dissenting in part as indicated in opinion.